UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM WHITE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:20-CV-905 RLW |
| ) | |
| MICHELE BUCKNER, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner William White's pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1). Petitioner is incarcerated at the South Central Correctional Center ("SRCC"). For the following reasons, the Court will deny habeas relief.

**Procedural History**

On August 12, 2015, a St. Louis County jury found White guilty of two counts of first-degree assault inflicting serious physical injury and two counts of armed criminal action. (Resp. Ex. D, ECF No. 9-6 at 50-54). Defense counsel filed a motion for judgment of acquittal of in the alternative for new trial, which was denied. (Id. at 47-49.) On October 2, 2015, White was sentenced as a persistent offender to four concurrent sentences of twenty-five years (id. at 50-54), and filed a timely notice of appeal. (Id. at 55-58). On November 15, 2016, the Missouri Court of Appeals affirmed White's convictions and sentences. State v. White, 503 S.W.3d 328 (Mo. Ct. App. 2016) (per curiam), (Resp. Ex. E, ECF No. 9-7). White did not file a motion for rehearing or application for transfer with the Missouri Court of Appeals. (Resp. Ex. J, ECF No. 9-12 at 6).

White filed a pro se application for post-conviction relief under Missouri Supreme Court Rule 29.15 on January 27, 2017. (Resp. Ex. J, ECF No. 9-12 at 172-77). Appointed counsel filed

an amended post-conviction motion on April 18, 2018. (Id. at 5-23). The post-conviction motion court held an evidentiary hearing on September 21, 2018, at which White's trial counsel testified (id. at 156; Resp Ex. G, ECF No. 9-9 at 1-61). The post-conviction court denied White's amended 29.15 motion on January 23, 2019. (Resp. Ex. J, ECF No. 9-12 at 142-153, 160-171.) White appealed and the Missouri Court of Appeals denied the appeal on May 5, 20120. White v. State, 598 S.W.3d 928 (Mo. Ct. App. 2019) (per curiam), (Resp. Ex. K, ECF No. 9-13 at 1-10.) The Missouri Court of Appeals issued its mandate on May 29, 2020. (Resp. Ex. L at 1-2.)

White filed the § 2254 petition in this Court on July 9, 2020, and it appears to be timely filed pursuant to 28 U.S.C. § 2244(d)(1)(A).

## Grounds Raised

The Petition raises the following grounds:

> GROUND ONE: Petitioner received ineffective assistance of trial counsel, in violation of his right to due process and effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, in that trial counsel failed to object to evidence of domestic violence <u>allegedly</u> perpetrated by Petitioner on Ms. Brown who was not a victim in the case.

(ECF No. 1 at 11.)

> GROUND TWO: Petitioner received ineffective assistance of trial counsel, in violation of his right to due process and effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, in that trial counsel failed to object to testimony that Petitioner sent a text message—after the incident—threatening to " finish what he started" because the State failed to lay a foundation to show that the text (if it was really sent) actually originated from Petitioner.

(Id. at 16.)

> GROUND THREE: Petitioner received ineffective assistance of trial counsel, in violation of his right to due process and effective assistance of counsel, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, in that trial counsel, despite defending Petitioner [on the basis that he] had not shot anyone, failed to object to Instructions 6 and 10 which differentiated between assault in the first and second degree by the absence of "sudden passion."

(Id. at 17.)

The Court notes that Petitioner in answering questions on the form § 2254 petition about the grounds he raised on direct appeal, in his Rule 29.15 post-conviction motion, and on post-conviction, attached to the Petition separate statements that set out the grounds raised in each of those proceedings. See Petition, ECF No. 1 at 2-3 (attaching Ground 9.(f) raised on direct appeal); ECF No. 1 at 4-7 (attaching Grounds 11(a)(5)(1)-(4) raised in Rule 29.15 motion); and ECF No. 1 at 4, 7-8 (attaching Grounds 11(b)(5)(1)-(3) raised on post-conviction appeal).

The Court does not construe the attachments as separate grounds asserted in Petitioner's § 2254 petition, or as facts in support of his first ground, as Respondent does. (See ECF No. 9 at 8, n.2.) The Court is confident these attachments are merely Petitioner's responses to the § 2254 petition form's questions regarding the grounds he raised in state court proceedings. This is supported in part by the non-sequential numbering of these grounds. Further, Petitioner's three § 2254 habeas grounds are set forth in subsequent pages of the § 2254 petition form, at the appropriate places for statement of his federal grounds, and are clearly labeled and have their own corresponding and supporting attachments. See ECF No. 1 at 9-12 (Ground One and Attachment); ECF No. 1 at 13-14, 16 (Ground Two and Attachment); and ECF No. 1 at 14-15, 17 (Ground Three and Attachment).

## Factual Background

The Missouri Court of Appeals described the facts of Petitioner's criminal case as follows in the post-conviction appeal:

> The State charged [White] with two counts of assault in the first degree and two accompanying counts of armed criminal action, for causing two victims serious physical injury by shooting them with a firearm. The evidence at trial showed that on the night of April 20, 2014, [White] and Florese Brown (Brown), [White's] "on and off" romantic partner, got into an argument, and [White] knocked Brown to the floor. At that point, Brown's son, Marquies Lewis (Lewis), and her nephew, Tavion Williams (Williams), came into the room. Lewis told [White] to stop hitting his mother and leave. He also challenged [White] to fight him. Lewis and Williams both told [White] it was the last time he would put his hands on Brown. [White] eventually left.

3

>   Brown's nephew, D'Andre Brown (D'Andre) later arrived at Brown's house, and around 9:40pm, he was outside the house with Lewis and Williams. [White] pulled up in his van and told them that no "little kids" were going to run him out of the house. [White] got out of his van with a silver revolver and shot Lewis in the hip. Lewis ran toward the house, and Williams and D'Andre ran away in another direction. [White] chased Williams and D'Andre and shot at them about four times, hitting D'Andre in the back of the leg and in his hand. [White] fired again at Lewis and missed, got in his van, attempted to run Lewis over, and then drove away. Police searched [White's] vehicle and found a lid for a box of ammunition of the same caliber as the bullets fired at the victims. They never recovered the gun or the box of ammunition.
>
>   [White] called Brown three days later and apologized, saying he did not mean for it to go that far. Brown told [White] to turn himself in to police, but [White] refused. Later, he sent Brown a text message demanding his belongings, saying if he did not get them, he would "come over and finish what [he] started." Brown believed [White] meant he would kill them.
>
>   [White] did not testify at trial. [White's] counsel argued that [White] did not shoot the victims. Counsel noted that according to the victims' testimony, there were two other men present outside the house that night, and counsel argued those men shot the victims.

(Resp. Ex. K at 3-4).

## Legal Standard

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999). Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990) (citing § 2254(a)).

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in State court in accordance with State procedural rules. Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted). In Missouri, "a claim must be presented 'at each step of the judicial process' in order to avoid procedural default." Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct.

4

App. 1980)). If the petitioner failed to properly present the claim in State court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 566 U.S. 1, 10-11 (2012).

Where the State court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). See Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time the petitioner's State conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

"A state court decision is 'contrary to' clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent yet reaches the opposite result." Zornes v. Bolin, 37 F.4th 1411, 1414 (8th Cir. 2022) (quoting Williams, 529 U.S. at 405-06). "A decision involves an 'unreasonable application of' federal law if the state court 'correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context.'" Id. at 1414-15 (quoting Munt v. Grandlienard, 829 F.3d 610, 614 (8th Cir. 2016)). "To demonstrate an unreasonable application, a prisoner must show

5

'that a state court's adjudication was not only wrong, but also objectively unreasonable, such that "fairminded jurists" could not disagree about the proper resolution.'" Id. at 1415 (quoting Smith v. Titus, 958 F.3d 687, 691 (8th Cir. 2020)). Federal habeas courts "evaluate the reasonableness of the state court's ultimate conclusion, not necessarily the reasoning used to justify the decision." Id. (citing Dansby v. Hobbs, 766 F.3d 809, 830 (8th Cir. 2014)).

Finally, when reviewing whether a State court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the State court proceedings, State court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Rice v. Collins, 546 U.S. 333, 338-39 (2006); Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings of fact do not automatically require the grant of habeas relief, however. Instead, the determination of these facts must be unreasonable in light of the evidence of record. Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

Federal courts are "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). "To obtain habeas relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet." Id. "The writ of habeas corpus is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice systems.'" Shinn v. Ramirez, 142 S. Ct. 1718, 1731 (2022) (quoting Harrington, 562 U.S. at 102).

6

**Evidentiary Hearing**

A district court may dismiss a habeas petitioner's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003)). Because the Court determines that Petitioner's claims do not warrant habeas relief on their face, it will deny the Petition without an evidentiary hearing.

**Discussion**

A. Ground One

In Ground One, Petitioner asserts he was denied effective assistance of trial counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when trial counsel failed to object to evidence of domestic violence allegedly perpetrated by Petitioner on Florese Brown, who was not a victim in the case.

The Missouri Court of Appeals identified and discussed the law and applied it to the facts relevant to this claim in the post-conviction motion appeal. First, the court set forth the standards it applies to review of a denial of post-conviction relief under Rule 29.15 and to ineffective assistance of counsel claims:

> The standard of review for the motion court's denial of a motion for post-conviction relief under Rule 29.15 is "limited to a determination of whether the findings of fact and conclusions of law are clearly erroneous." Rule 29.15(k); Hickey v. State, 328 S.W.3d 225, 227 (Mo. App. E.D. 2010). Findings and conclusions are clearly erroneous "only if, after a review of the entire record, the reviewing court is left with a definite and firm impression that a mistake has been made." Hickey, 328 S.W.3d at 227.
>
> On a claim of ineffective assistance of counsel, a movant must show by a preponderance of the evidence first, that counsel's performance was deficient, and second, that the movant was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). "[T]here is a strong presumption that counsel's conduct was

7

reasonable and effective." Gill v. State, 300 S.W.3d 225, 232 (Mo. banc 2009). A strategic decision made by trial counsel is virtually unchallengeable. Tucker v. State, 468 S.W.3d 468, 473 (Mo. App. E.D. 2015). When determining the reasonableness of trial counsel's actions, we must view strategic choices as of the time those choices were made, and we must take into consideration the circumstances of the case. Id. (citing Strickland, 466 U.S. at 689).

(ECF No. 9-13 at 5.)

The Court of Appeals then addressed the merits of White's claim that his counsel was ineffective for failing to object to evidence of White's alleged domestic violence against Florese Brown, as follows:

> Movant argues the motion court clearly erred in denying his claim that his trial counsel was ineffective for failing to object to evidence of uncharged acts of domestic violence that Movant committed against Florese Brown (Brown), because such evidence was more prejudicial than probative. We disagree.
>
> A failure to object is insufficient in and of itself to constitute ineffective assistance of counsel. West v. State, 244 S.W.3d 198, 200 (Mo. App. E.D. 2008). Where a movant's claim of ineffective assistance of counsel is based on a failure to object, the movant must demonstrate that: "(1) the objection would have been meritorious; and (2) the failure to object resulted in a substantial deprivation of [the] movant's right to a fair trial." Id. To demonstrate prejudice, Movant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. State v. Shurn, 866 S.W.2d 447, 468 (Mo. banc 1993) (citing Strickland, 466 U.S. at 694).
>
> Here, Brown testified that her relationship with Movant was "bad" and that "there was physical violence" in the relationship. She also testified Movant had hit her. Movant's counsel did not object to this evidence. The prosecutor also asked whether Movant had ever made any threats, Movant's counsel objected, and the court overruled his objection. Brown testified that Movant had threatened to kill her and her kids if she tried to leave him.
>
> Movant argues Brown's testimony constituted inadmissible evidence of prior uncharged crimes for which Movant was not on trial, and such testimony prejudiced him. A criminal defendant has the right to be tried only for the offense charged. State v. Burns, 978 S.W.2d 759, 760 (Mo. banc 1998). "[E]vidence of prior uncharged misconduct is not admissible for the purpose of showing the propensity of the defendant to commit such crimes . . . because [it] may encourage the jury to convict the defendant because of his propensity to commit such crimes without regard to whether he is actually guilty of the crime charged." Id. at 761 (internal quotation omitted). However, evidence of a defendant's prior misconduct is admissible when it is logically and legally relevant. State v. Williams, 366 S.W.3d 609, 623-24 (Mo. App. W.D. 2012). Logical relevance includes evidence

probative of motive, intent, or when the conduct is part of the circumstances or sequence of events surrounding the offense charged. Id. at 624. Such evidence gives a "complete and coherent picture of the criminal events that transpired." Id. (quoting State v. Davis, 226 S.W.3d 167, 170 (Mo. App. W.D. 2007)). Legal relevance is evidence for which the probative value outweighs the prejudicial effect. Id.

At the evidentiary hearing on Movant's motion, trial counsel testified that he could not recall a reason for not filing a motion in limine to exclude evidence of domestic abuse, or for not objecting during the trial. Failure to remember a strategic reason for counsel's decision is not enough to overcome the presumption that trial counsel provided effective assistance. Marshall v. State, 567 S.W.3d 283, 293 (Mo. App. E.D. 2019).

The motion court found that the evidence was relevant to show the mental state of Brown and the victims, thus any objection would not have been meritorious. While we disagree that proof of mental state is a permissible ground for introducing evidence of uncharged conduct, we nevertheless find that the motion court did not clearly err in denying Movant's claim. Brown's testimony of past abuse and the threat Movant made to kill them provided context for why Lewis and D'Andre told Movant that night would be the last time he would put his hands on Brown, and contributed to a complete picture of the events.

Moreover, the testimony of past acts of abuse did not prejudice Movant here. The evidence against Movant was overwhelming, in that there were multiple witnesses to both the argument and the shooting, and evidence that Movant later apologized for the shooting. Even if counsel had objected and the trial court had sustained the objection, there is no reasonable probability the outcome of Movant's trial would have been different. See Shurn, 866 S.W.2d at 468. Point denied.

(Resp. Ex. K, ECF No. 9-13 at 5-7.)

Petitioner asserts that his trial counsel knew before trial that Petitioner and Brown had a tumultuous relationship, as counsel had deposed Brown and she mentioned past domestic violence perpetrated by Petitioner, but counsel did not move in limine to exclude the testimony, did not object to Brown's testimony at trial, and did not raise the issue in the motion for new trial.[1] In his

---

[1] To the extent Petitioner argues his trial counsel did not raise the issue of admission of Brown's testimony in the motion for new trial, the claim is defaulted as Petitioner never raised it in state court. See Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (claims must be presented at each step of the judicial process in State court to avoid procedural default). Because Petitioner failed to present this claim to the Missouri state courts in accordance with the State's procedural rules, it is procedurally defaulted and cannot be considered by this Court. See Skillicorn v. Luebbers, 475 F.3d 965, 976 (8th Cir. 2007). The Court may review the merits of this claim only if Petitioner shows cause for the default and actual prejudice resulting

9

Traverse, Petitioner argues the Missouri Court of Appeals' decision was based upon an unreasonable determination of the facts in light of the evidence presented, because the evidence was so inflammatory it must arouse the jury's emotions of prejudice or hostility, and its probative value was substantially outweighed by its unduly prejudicial nature, so any reasonably competent attorney would have taken action to keep it from the jury. (ECF No. 14 at 5-7.)

Respondent argues that the decision of the Missouri Court of Appeals denying this claim on the merits is reasonable and entitled to deference.

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland, 466 U.S. at 686. The Supreme Court set forth the standard governing ineffective assistance of counsel claims in Strickland. To establish ineffective assistance, a petitioner must show that (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense." Id. at 687-88. Strickland provides a "highly deferential" standard to review ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

On federal habeas review, this Court does not determine whether Petitioner's trial counsel provided effective assistance, but instead examines "whether the state court's application of the Strickland standard was unreasonable." See Harrington, 562 U.S. at 101; see also Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence,

---

from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Petitioner makes no attempt to overcome his procedural default. Accordingly, the Court finds this claim is procedurally barred and does not address it further.

and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

The standard on federal habeas review "is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington, 562 U.S. at 101. Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 105. "Counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Gray v. Norman, 739 F.3d 1113, 1117 (8th Cir. 2014) (quoting Strickland, 466 U.S. at 690). "Where a state court concludes that there was no ineffective assistance under this 'highly deferential' standard, a federal court then must review counsel's performance under the 'deferential lens of § 2254(d).'" Id. (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).

The Missouri Court of Appeals applied the correct legal standard of Strickland, 466 U.S. 668, addressed Petitioner's claim, and concluded that evidence of his prior domestic violence conduct was admissible under Missouri evidentiary law because it was logically and legally relevant to the circumstances of the crime charged. See Williams, 366 S.W.3d at 623-24. It further concluded that even if trial counsel had objected and the trial court had sustained the objection, there is no reasonable probability the outcome of White's trial would have been different because the evidence against him was "overwhelming." As such, it concluded that even if trial counsel's conduct was deficient, White could show no prejudice as a result.

The Court determines that the Missouri Court of Appeals' application of the Strickland standard to this claim of ineffective assistance of defense counsel was not unreasonable for the reasons stated by that court. See Owens, 198 F.3d at 681; Harrington, 562 U.S. at 101. Further, this Court may not second-guess the state court's finding under Missouri law that challenges to the admission of this evidence would have been unsuccessful. See Arnold v. Dormire, 675 F.3d

11

1082, 1086 (8th Cir. 2012) ("We do not second-guess the decision of a Missouri state court on Missouri law."); Estelle v. McGuire, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions.").

Ground One is denied.

B.  Ground Two

In Ground Two, Petitioner asserts he was denied effective assistance of trial counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when trial counsel "failed to object to testimony that Petitioner sent a text message—after the incident—threatening to 'finish what he started' because the State failed to lay a foundation to show that the text (if it was really sent) actually originated from Petitioner." (ECF No. 1 at 16.)

The Missouri Court of Appeals identified and discussed the law and applied it to the facts relevant to this claim on the post-conviction motion appeal as follows:

> Movant argues the motion court clearly erred in concluding his trial counsel was not ineffective for failing to object to the foundation for admitting text messages that Brown testified Movant had sent to her. We disagree.
>
> During Brown's testimony, she stated that she had dated Movant on and off for over three years, talked on the phone with him multiple times, and would recognize his voice if he called her from his phone number. She testified that Movant called her three days after the shooting. He asked for his clothes and also apologized, saying "he didn't mean for it to go that far." Additionally, Brown testified she received several texts from Movant during the month following the shooting, and she responded to some of them. In one of them, he said, "Give me my stuff before I come over and finish what I started."
>
> This Court's standard for the admissibility of text messages is as follows:
>
>> [T]he proponent of such evidence must present some proof that the message[s] were actually authored by the person who allegedly sent them. This should not be an unduly burdensome requirement and can be satisfied by circumstantial evidence. Proof could be in the form of an admission by the author that he actually sent them, or simply an admission by the author that the number from which the message was received is his number and that he has control of that phone. Such proof could even be established by the person receiving the message testifying that he regularly receives text messages from

> the author from this number, or something distinctive about the text message indicating the author wrote it, such as a personalized signature.
>
> State v. Harris, 358 S.W.3d 172, 175 (Mo. App. E.D. 2011). Given Brown's testimony that she regularly received calls and texts from Movant, and that the text containing the threat contained the same request for Movant's things as did prior calls and texts, we find Movant failed to establish that any objection to the foundation would have been meritorious, or that even if it was, such an objection would have affected the outcome of Movant's trial. The State could have simply asked Brown to clarify that the phone number from which she received this particular text was the same phone number from which she regularly received texts from Movant, and that would have satisfied the foundational requirement set out in Harris.
>
> Moreover, even if the trial court had excluded the text message, the motion court did not clearly err in concluding that Movant failed to establish the outcome of his proceeding would have been different in light of the other evidence in the record of Movant's guilt, including his apology during his phone call to Brown three days after the shooting. Point denied.[3]
>
> [3] We do note the motion court also found that Movant's trial counsel made a strategic choice not to object to the lack of foundation for the text because counsel had phone records he wanted to introduce for which he could not establish the foundation and did not want the State to object. We do not find this to be reasonable trial strategy. However, because Movant cannot show both that an objection to the foundation of the text message would have been meritorious and that it prejudiced Movant, we affirm the motion court's denial of Movant's claim on that basis. See Shurn, 866 S.W.2d at 468; Kohlheim v. State, 482 S.W.3d 851, 857 (Mo. App. E.D. 2016) (if movant fails to establish either deficient performance or prejudice prong of Strickland test, we need not consider the other).

(Resp. Ex. K, ECF No. 9-13 at 7-9.)

In support of his claim, Petitioner states only that trial counsel could anticipate Brown might testify about the threat, as it was mentioned in the police reports and in Brown's deposition testimony, and that Petitioner told trial counsel before trial he never made such a threat. Petitioner also states that Brown testified at trial she no longer possessed the phone containing the incriminating statement, and claimed she lost it. (ECF No. 1 at 16.) In his Traverse, Petitioner discusses Missouri law on authenticating and establishing the foundation for admission of text messages, asserts that no foundation was laid for admission of the highly prejudicial testimony

13

concerning the text, and contends that but for trial counsel's failure to object to its admission "this Court's confidence in the outcome of the trial must be undermined." (ECF No. 14 at 7-12.)

Respondent argues that Petitioner does not assert any facts to demonstrate that but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Further, Respondent asserts the decision of the Missouri Court of Appeals denying this claim on the merits is reasonable and entitled to deference.

The Missouri Court of Appeals applied the correct legal standard of Strickland, 466 U.S. 668, addressed Petitioner's claim, and concluded Petitioner failed to establish that an objection to the foundation for admission of testimony concerning the texts would have been meritorious under the standards of Missouri evidentiary law, Harris, 358 S.W.3d at 175, given Brown's testimony that she regularly received calls and texts from Movant, and that the text containing the threat contained the same request for Movant's things as did prior calls and texts from Petitioner. The court also stated that if such an objection had been made, the State could have easily laid an adequate foundation for admission of the evidence in accordance with Missouri law.

The state court further concluded that even if trial counsel had objected and the trial court had sustained the objection, this would not have affected the outcome of White's trial. As such, it concluded that even if trial counsel's conduct was deficient, White could show no prejudice as a result.

The Court determines that the Missouri Court of Appeals' application of the Strickland standard to this claim of ineffective assistance of defense counsel was not unreasonable for the reasons stated by that court. See Owens, 198 F.3d at 681; Harrington, 562 U.S. at 101. Further, this Court may not second-guess the state court's finding that under Missouri law challenges to the admission of this evidence would have been unsuccessful. See Arnold, 675 F.3d at 1086 ("We do not second-guess the decision of a Missouri state court on Missouri law."); Estelle, 502 U.S. at

14

67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions.").

Ground Two is denied.

C.  Ground Three

In Ground Three, Petitioner asserts he was denied effective assistance of trial counsel under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution because trial counsel, "despite defending Petitioner [on the basis that he] had not shot anyone, failed to object to Instructions 6 and 10 which differentiated between assault in the first and second degree by the absence of 'sudden passion.'" (ECF No. 1 at 17.)

The Missouri Court of Appeals identified and discussed the law and applied it to the facts relevant to this claim on the post-conviction motion appeal as follows:

> Movant argues that the motion court clearly erred in denying his motion because he demonstrated that trial counsel was ineffective for failing to object to the verdict directors for first-degree assault because they contained language instructing the jury to find Movant guilty if they found he did not act under the influence of a sudden passion. Movant argues that his counsel should have requested that the differentiating element between first- and second-degree assault be the degree of physical injury caused, rather than the presence of sudden passion. We disagree.
>
> At the evidentiary hearing, Movant's counsel testified that though he pursued a defense that Movant was not the shooter, he also requested lesser-included instructions to give the jury the opportunity to choose a lesser offense if they were intent on convicting Movant. He testified that he had made this strategic choice in several other trials as well. Further, Movant's counsel testified he intentionally chose the presence of sudden passion as the differentiating element between first- and second-degree assault, given the evidence of the arguments on the night of the shooting and the "chaotic" nature of the scene that night. Additionally, counsel believed that the fact that Movant returned to the house in order to collect his belongings, but then things escalated, would have allowed the jury to find sudden passion if they believed Movant was the shooter.
>
> We find that the motion court did not clearly err in concluding that Movant's trial counsel did not render ineffective assistance. Even if the trial court would have given a lesser-included instruction based on the degree of physical injury if requested, Movant has failed to rebut the presumption that his counsel acted

15

> []reasonably[2] by making the strategic decision to make the presence of sudden passion the differentiating element. Taking into account the circumstances of the case, including the victims kicking Movant out of his home and the arguments between Movant, Brown, and the victims, we cannot conclude that trial counsel's decision was unreasonable. See Tucker, 468 S.W.3d at 473 (citing Strickland, 466 U.S. at 689) (noting strategic decision made by trial counsel is virtually unchallengeable; when determining reasonableness of trial counsel's actions, court must take into consideration circumstances of case). Because Movant failed to establish his trial counsel was ineffective, we need not consider prejudice. Kohlheim v. State, 482 S.W.3d 851, 857 (Mo. App. E.D. 2016) (if movant fails to establish either deficient performance or prejudice prong of Strickland test, we need not consider the other). Point denied.

(Resp. Ex. K, ECF No. 9-13 at 9-10.)

Petitioner argues that the defense evidence "did not support sudden passion, as trial counsel never tried to prove that Petitioner acted under the influence of sudden passion and would have had a hard time doing so in light of Petitioner leaving and returning to the scene 20 to 30 minutes after an earlier altercation." (ECF No. 1 at 17.) In his Traverse, Petitioner states that "clearly the evidence as presented by the State defeated any claims of 'sudden passion,'" and asserts that a reasonably competent attorney would have objected to the lack of sudden passion element language in the instruction. (ECF No. 14 at 15.) Petitioner claims he was prejudiced because, but for the "sudden passion" language in the instructions, the outcome of the trial would have been different as the jury could have convicted him of the lesser crime of Assault Second Degree instead of Assault First Degree. (Id. at 13-16.)

Respondent argues the Missouri Court of Appeals did not unreasonably apply the Strickland standard in denying Petitioner post-conviction relief.

---

[2]There is a typographical error in this portion of the Missouri Court of Appeals' opinion, as it states that White "failed to rebut the presumption that his counsel acted *unreasonably* by making the strategic decision to make the presence of sudden passion the differentiating element." (Resp. Ex. K, ECF No. 9-13 at 9) (emphasis added). Under Strickland, there is a strong presumption that an attorney's performance is professionally reasonable. 466 U.S. at 689. Earlier in its opinion, the Missouri Court of Appeals articulated the correct standard when it stated, "[T]here is a strong presumption that counsel's conduct was *reasonable* and effective." Gill v. State, 300 S.W.3d 225, 232 (Mo. banc 2009)." (Resp. Ex. K, ECF 9-13 at 5) (emphasis added).

16

A trial attorney's "decisions related to trial strategy are virtually unchallengeable" under the Supreme Court's Strickland standard. Bowman v. Gammon, 85 F.3d 1339, 1345 (8th Cir. 1996) (citing Strickland, 466 U.S. at 190). See also Sanders v. Trickey, 875 F.2d 205, 207 (8th Cir. 1989) (when determining whether trial counsel's representation was deficient, a "court must avoid second guessing trial strategy"). The Court determines that the Missouri Court of Appeals' application of the Strickland standard to this claim of ineffective assistance of defense counsel was not unreasonable for the reasons stated by that court. See Owens, 198 F.3d at 681; Harrington, 562 U.S. at 101.

Ground Three is denied.

## Conclusion

For the foregoing reasons, the Court concludes that Grounds One, Two, and Three in Petitioner William White's Petition for Writ of Habeas Corpus fail on the merits. Petitioner's claim in Ground One, that his trial counsel was ineffective for failing to include in the motion for new trial the issue of admission of testimony of domestic violence White allegedly perpetrated on witness Brown, is procedurally barred.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner William White's Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner has not made a substantial showing of a denial of a constitutional right, or that the issues presented were adequate to deserve encouragement to proceed further, and this Court will not issue a Certificate of Appealability.

A separate Judgment in accordance with this Memorandum and Order will be filed herewith.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 17th day of July, 2023.